**FRANKLIN JEFFERSON LTD.,**
**et al., Plaintiffs,**

**v.**

**CITY OF COLUMBUS, Defendant.**

No. 2002–CV–0055.

United States District Court,
S.D. Ohio,
Eastern Division.

May 6, 2002.

J. Michael Murray, Berkman Gordon Murray & Devan, Cleveland, OH, for plaintiffs.

Keith Scott Mesirow, Patricia A. Delaney, Columbus city Attorney's Office, Columbus, OH, for defendants.

### ORDER AND OPINION

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction filed on January 17, 2002. The Court conducted a Preliminary Injunction Hearing on April 11 and 12, 2002. For the following reasons, the Court **GRANTS** Plaintiffs' motion.

## II. FACTS

Plaintiffs request a preliminary injunction to restrain the City of Columbus from enforcing an ordinance regulating adult businesses in the City. On July 30, 2001, the Columbus City Council enacted Ordinance 1425–01 ("the Ordinance"), requiring all future "adult entertainment establishments" and "adult stores" to be located in the City's manufacturing zones and at least one half mile from each other, residential areas, day care centers, schools, churches, and other community activities.[1] The Ordinance deleted previous sections of the City's zoning code that permitted adult businesses in "C–4" Commercial Districts, and now restricts them to "M" Manufacturing Districts.[2]

---

1. On April 01, 2002, the Columbus City Council amended the July 30, 2001 Ordinance. The Court's Order and Opinion is based upon the April 01, 2002 version, which contained new definitions of "Adult entertainment establishment", "Adult material", and "Adult store".

2. Defendant states that the M Manufacturing District includes all commercial development

The Ordinance defines an "adult entertainment establishment" as:

an auditorium, bar, cabaret, concert hall, nightclub, restaurant, theater, or similar commercial establishment that recurrently features or provides one of more of the following:

1. Persons who appear in the *nude* [3],

2. A live performance distinguished or characterized by an emphasis on the depiction, description, exposure, or representation of *Specified anatomical areas* or the conduct or simulation of *Specified sexual activities*, or

3. Audio or video displays, computer displays, films, motion pictures, slides, or other visual representations or recordings characterized or distinguished by an emphasis on the depiction, description, exposure, or representation of *Specified anatomical areas*, or the conduct or simulation of *Specified sexual activities*.

Similarly, the Ordinance defines an "adult store" as one or more of the following:

1. an establishment which has a majority of its shelf space or square footage devoted to the display, rental, sale, or viewing of adult material for any form of consideration.

2. An establishment with an *Adult booth*.

"Adult material" is defined as:

items consisting of one or more of the following:

1. Digital or printed books, magazines, periodicals, audio, video displays, computer displays, films, motion pictures, slides, or other visual representations or recordings that are characterized or dis-

tinguished by an emphasis on the depiction, description, exposure, or representation of *Specified anatomical areas* or the conduct or simulation of *Specified sexual activities*, or

2. Devices, instruments, novelties, or paraphernalia designed for use in connection with *Specified sexual activities*, or that depict or describe *Specified anatomical areas*.

Plaintiff Franklin Jefferson, Ltd. plans to sell and disseminate sexually oriented books, magazines, periodicals, and videotapes on property it owns in the City, which is zoned C–4 Commercial. Franklin Jefferson seeks injunctive relief because the Ordinance prevents it from opening the planned adult store on its premises. Plaintiffs U.S. Four, Inc. d/b/a Dockside Dolls and Giavono Foods, Inc. d/b/a Sirens operate businesses in a C–4 Commercial zoning district, in which they present topless female dancing. Plaintiff N.I.R.A., Ltd., is Giavono Foods' landlord. These Plaintiffs seek a preliminary injunction because the new Ordinance prevents them from expanding or relocating their adult establishments, and may prohibit them from operating on their current premises.

### III. Procedural History

Plaintiffs filed a Complaint for Declaratory Judgment, Preliminary Injunction, and Permanent Injunction on January 17, 2002. The Complaint contains six counts, alleging violations of the United States Constitution, the Ohio Constitution, the Columbus charter, and the laws of the City of Columbus. This Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3), 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 1367.

---

uses and the lowest tier of manufacturing uses, such as dry cleaners, food manufacturers, salvage yards, and warehouses. Other heavier manufacturing uses are placed in M–1 and M–2 manufacturing districts.

**3.** Italicized words or phrases also have specific meanings and definitions within the Ordinance.

On April 11 and 12, 2002, the Court conducted an evidentiary hearing at which live testimony was taken. Plaintiffs' representatives Michael Moran, Bruce Huhn, and Timothy Wright testified, along with city planning expert R. Bruce McLaughlin, for Plaintiffs. Defendant presented testimony from the City's chief zoning official, Elizabeth Clark.

## IV. STANDARD OF REVIEW

In determining whether to issue a preliminary injunction, the Court must examine: (1) whether the movant has shown a strong likelihood of success on the merits; (2) the irreparable harm that could result to the movant if the injunction is not issued; (3) the possibility of substantial harm to others if the injunction is issued; and (4) whether the public interest would be served by issuing the injunction. *Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir.1998). The elements are factors to be balanced against each other, but each element need not be satisfied to issue a preliminary injunction. *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1480 (6th Cir.1995) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985)). A preliminary injunction is an extraordinary remedy which should only be granted if the movant carries his or her burden of proving that the circumstances clearly demand it. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (citations omitted). This Court will consider each of the elements to determine whether Plaintiffs have met their burden.

## V. ANALYSIS

### A. Likelihood of Success on the Merits

Plaintiffs argue that the Ordinance imposes an impermissible prior restraint against the dissemination of protected speech, in violation of their rights under the First and Fourteenth Amendments to the United States Constitution. They maintain that the Ordinance does not leave open alternative avenues of communication. Plaintiffs also contend that the Ordinance is not designed to further a substantial government interest, and that the City cannot establish that it considered evidence of harmful secondary effects from adult businesses when it enacted the law.

As a threshold consideration, the City of Columbus argues that Plaintiffs lack standing to assert an "as applied" constitutional claim, because their Complaint does not allege that the Ordinance has been enforced by the City at any time against Plaintiffs' interests. Defendant maintains that the Ordinance is not a prior restraint, but rather a content-neutral time, place, and manner regulation. The Ordinance, according to the City, was enacted based on evidence gleaned from numerous studies, reports, and the experiences of other municipalities in dealing with the effects of adult businesses. Defendant argues that it has a substantial interest in reducing such harmful secondary effects. The City contends that the Ordinance, read in its entirety, is narrowly tailored to serve this end. Finally, Defendant claims that the M Manufacturing District encompasses 15,-401 of the City's 138,109 acres, thus leaving 4.33% of the Columbus area available for adult businesses.

### 1. Standing to Sue

■ As the Supreme Court has stated, "the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of....

Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (footnote, citations, and internal quotation marks omitted).

The Court finds that Plaintiffs have standing to bring this suit and that this controversy is ripe for consideration. The evidence is unrefuted that all Plaintiffs have suffered injuries in fact. Franklin Jefferson was ordered to cease work on a new facility because of the new Ordinance. Michael Moran, the manager of Franklin Jefferson, testified that on April 10, 2002, his company received a Notice To Stop Work that the City of Columbus had issued for 4375 Roberts Road, where Plaintiff was planning to open an adult bookstore. The City's chief zoning official, Elizabeth Clark, testified that she revoked Franklin Jefferson's zoning clearance for this property because of the Ordinance.

Plaintiffs, U.S. Four, Giavono Foods, and N.I.R.A., also seek to safeguard their constitutional rights threatened by the Ordinance.[4] Challenging the Ordinance on its face, they argue that the zoning law prevents them from relocating or expanding their existing adult establishments by failing to provide reasonable alternative avenues of communication. Similar issues of standing arose in *Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524 (9th Cir.1993). The plaintiffs in *Topanga,* also adult business operators, argued that enforcement of a zoning ordinance would deny the public access to the type of enter-

tainment they sold. The Ninth Circuit determined, however, that "the crux of their argument is that the ordinance infringes upon their own First Amendment rights. They argue that [the ordinance] suppresses their protected speech by failing to provide them with reasonable alternative relocation sites for their businesses." *Topanga,* 989 F.2d at 1528. The *Topanga* court stated that "[b]ecause the Adult Businesses have standing to protect their personal First Amendment rights, we need not decide whether they possess standing to assert the First Amendment rights of the public to have access to the types of expression sold by these businesses." *Id.* Here, too, the Ordinance clearly implicates the First Amendment rights of each Plaintiff, and these businesses are entitled to protect their rights.

Furthermore, there exists a causal connection between Plaintiffs' injuries and Defendant's Ordinance. The City's action with respect to Franklin Jefferson was undertaken pursuant to the Ordinance. Plaintiffs, U.S. Four, Giavono Foods, and N.I.R.A., are being denied the opportunity to expand because of the Ordinance. Finally, the injuries are likely to be redressed by a favorable decision of this Court. Franklin Jefferson can continue its work, and the other Plaintiffs can expand or relocate if necessary. Standing, therefore, is not an issue in this case.

## 2. Validity of the Ordinance

■ To pass constitutional muster, the City of Columbus' Ordinance must meet the standards set forth in the seminal case

---

4. Plaintiffs U.S. Four and Giavono Foods were cited under the old zoning law for operating adult entertainment establishments without certificates of zoning clearance. They are currently appealing a Board of Zoning ruling made under the former ordinance to the Court of Common Pleas. Should Plaintiffs prevail in state court, they can remain at

their current locations as preexisting nonconforming entities insofar as the new Ordinance is concerned. But Ms. Clark testified that if Plaintiffs, U.S. Four, Giavono Foods, and N.I.R.A., lose their zoning appeal in state court, the Ordinance would also prohibit them from operating their businesses at their current locations.

of *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). In *Renton*, the Supreme Court upheld a zoning ordinance that prohibited adult motion picture theaters from locating within 1,000 feet of any residential zone, single or multiple-family dwelling, church, park, or school. Although regulations designed to restrain speech on the basis of content presumptively violate the First Amendment, the Supreme Court concluded in *Renton* that "so-called 'content-neutral' time, place and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Id.* at 47, 106 S.Ct. 925. A city's zoning regulations are content-neutral when its "predominate concerns" are the secondary effects of adult businesses, and not the content of their products. *Id.* The *Renton* Court identified acceptable governmental zoning interests in preventing crime, protecting the city's retail trade, maintaining property values, and protecting the quality of the City's neighborhoods, commercial districts, and urban life. *Id.* at 48, 106 S.Ct. 925. While zoning ordinances must be narrowly drawn, a least-restrictive means analysis is not required. *See Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *Bamon Corp. v. Dayton*, 730 F.Supp. 80, 84 n. 5, 89 (S.D.Ohio 1990).

In establishing its intent to address the secondary effects—an intent that must be made express—a city may rely upon studies and evidence "generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Renton*, 475 U.S. at 51–52, 106 S.Ct. 925; *see also CLR Corp. v. Henline*, 702 F.2d 637 (6th Cir.1983) (requiring factual justifications). It is not necessary that the sites in which a city permits location of adults-only businesses be economically viable; all that is required is that a city not foreclose residents from a reasonable opportunity to open such a facility in the city. *See Renton*, 475 U.S. at 53–54, 106 S.Ct. 925 ("In our view, the First Amendment requires ... that [the city] refrain from effectively denying [the owners of adult theaters] a reasonable opportunity to open and operate an adult theater within the city").

In the matter *sub judice*, the City reviewed evidence of the effects of sexually oriented businesses. As stated in the Ordinance's preamble, the Columbus City Council relied upon numerous studies, reports, articles, judicial decisions, and the experiences and legislative findings of other municipalities relating to the impact and secondary effects of adult businesses. Clearly, the law is focused on the secondary effects of adult businesses, rather than the content of their goods and services.[5] The Ordinance, therefore, must be analyzed as a content-neutral time, place and manner regulation.

As a content-neutral regulation, the Ordinance must satisfy a two-prong test. First, it must serve a substantial govern-

---

5. The Preamble to No. 1425–01 states:
   the regulations established pursuant to this ordinance are in no way based upon the content of protected speech, if any, associated with Sexually Oriented Businesses, and the purpose and intent of the regulations established pursuant to this Ordinance is not to restrict or prohibit protected speech, if any, associated with Sexually Oriented Businesses, but rather is to address, mitigate, and, if possible, eliminate the adverse impacts and secondary effects of Sexually Oriented Businesses on the areas in which such Businesses are located or take place and to ensure that these Businesses are established, managed and operated in a safe and legal manner at all times.

ment interest. *See id.* at 50, 106 S.Ct. 925. The evidence the City considered suggests that adult businesses encourage prostitution, increase the frequency of sexual assaults, attract related criminal activity, and undermine public health and safety. Defendant, of course, has a substantial interest in combating these threats. These considerations are nearly identical to those identified in *Renton* as serving the "substantial governmental interest" of responding to the "admittedly serious problems created by adult theaters." *Id.* at 48–50, 54, 106 S.Ct. 925. Plaintiffs offer no evidence to rebut the evidence that the Ordinance was enacted to combat the secondary effects of adult businesses.

Second, the Ordinance must allow for reasonable alternative avenues of communication. *See id.* at 50, 106 S.Ct. 925. In this case, the Ordinance does not. The *Renton* Court found that the regulation, which left "more than five percent of the entire land area of Renton open to use as adult theater sites," allowed for reasonable alternative avenues of communication. *Id.* at 53, 106 S.Ct. 925. Other courts, however, have invalidated zoning laws restricting adult businesses to less than one percent of a city's total acreage. *See, e.g., Christy v. City of Ann Arbor,* 824 F.2d 489, 492 (6th Cir.1987) (noting that restricting adult businesses to 0.23% might be unconstitutional); *University Books, Inc. v. Miami–Dade County,* 132 F.Supp.2d 1008, 1014 (S.D.Fla.2001) ("It is clear that .0092% of the city acreage is constitutionally deficient."); *University Books and Videos, Inc. v. Metropolitan Dade County,* 33 F.Supp.2d 1364, 1371 (S.D.Fla.1999) (restricting adult businesses to 0.002% of the county's total acreage is not reasonable); *Morscott, Inc. v. City of Cleveland,* 781 F.Supp. 500, 505 (N.D.Ohio 1990) (enjoin-

ing a law restricting adult uses to 0.007% of the city's total acreage). Courts have also examined the adequacy of alternative avenues of communication in terms of population. *See, e.g., BBI Enterprises, Inc. v. City of Chicago,* 874 F.Supp. 890, 896 (N.D.Ill.1995) (stating "[w]hat is clearly a much more relevant basis for comparison is the relationship between (1) the number of a city's sites that are really available for adult uses and (2) that city's population—a relationship that speaks more directly in supply-and-demand terms"); *Centerfold Club, Inc. v. City of St. Petersburg,* 969 F.Supp. 1288, 1306 (M.D.Fla.1997) (finding that one site for every 12,565 people is inadequate); *Southern Entertainment Co. of Fla., Inc. v. City of Boynton Beach,* 736 F.Supp. 1094 (S.D.Fla.1990) (finding that one site for every 4,208 people is reasonable).

At the evidentiary hearing, Plaintiffs presented as an expert R. Bruce McLaughlin, a city planning expert who analyzed the effects of the Ordinance on adult businesses in Columbus. Mr. McLaughlin's testimony established that, because of the one half mile distance requirements in the Ordinance, a maximum of eleven sites throughout the City could be available for adult uses. These eleven sites fall woefully inadequate of the *Renton* standard. According to the 2000 census, the population of Columbus is 711,470, thus leaving but one possible adult use site for every 64,679 people. Based on Mr. McLaughlin's calculations, if each of these eleven sites was one acre, only 0.008% of the City's total acreage (0.053% of the City's commercial area and 0.026% of its combined commercial and industrial area) would be available for adult uses.[6] Even giving the City the benefit of the doubt and assuming that each site covered six

---

6. Mr. McLaughlin assumed that each adult establishment would occupy one acre, which

would allow for large 10,000 to 12,000 square foot cabarets or very large bookstores.

acres, as the City claims is feasible, just 0.047% of the total acreage would be available for such establishments.[7] By any measure, this Ordinance preserves less than one percent of the City's total acreage for the establishment of adult businesses. The jurisprudence, as noted above, is practically uniform that this paucity of acreage does not allow for reasonable alternative avenues of communication.

Plaintiffs' expert further testified that none of the eleven potential sites is, in fact, viable for an adult business. Although *Renton* forbids consideration of economic factors in determining the adequacy of alternative avenues of communication, courts have examined these issues in the context of whether a particular site is part of an actual real estate market. *See, e.g., Topanga*, 989 F.2d at 1530–32. In *Topanga*, the Ninth Circuit upheld a preliminary injunction against a Los Angeles zoning scheme, which prohibited adult businesses from operating within 500 feet of residential areas, churches, schools, and parks, and within 1,000 feet of other adult uses. The 500 foot residential segregation requirement applied to existing adult uses, thus forcing many such establishments to relocate. In examining possible sites where adult businesses could relocate under the zoning law, the court noted that "*Renton* assumed that the relocation sites were already part of the relevant real estate market" and were not totally unavailable. *Id.* at 1530. The Ninth Circuit held that a particular site may be considered part of the relevant real estate market if: (1) there is a genuine possibility of it being available; (2) it is reasonably accessible to the general public; (3) it has a proper infrastructure such as sidewalks, roads, and lighting; (4) it is suited to some gener-

ic commercial enterprise; and if (5) it is commercially zoned. *Id.* at 1531–32.

The eleven locations at issue here fall within M Manufacturing districts and comply with the Ordinance's distance requirements. Yet, each possible site suffers from various defects that Mr. McLaughlin believes precludes them from being considered part of the relevant real estate market. He testified that all of the eleven sites are either inaccessible, occupied by a permanent inhabitant not likely to relocate, or are industrial in nature without appropriate infrastructure. One site, for example, lacks the genuine possibility of availability, as it is located on property used by the Busch beer brewery that is unlikely to relocate. A second possible site is located at the permanent occupancy of the Limited Corporation's manufacturing plant. Another site is not suitable to construction due to a steep slope, while the others lack access roads, sidewalks, and streetlights. In Mr. McLaughlin's opinion, because these eleven sites are unsuitable for commercial activity, there is not a single location anywhere in the City of Columbus where an adult business can open.

Defendant presented no evidence to refute Mr. McLaughlin's analysis. Its assertion that 4.33% of the Columbus area is available for adult uses is misleading, as the City's calculations do not take into account the Ordinance's stringent distance requirements. Indeed, Elizabeth Clark conceded that the City never undertook any analysis to determine how many adult establishments could possibly be permitted under the zoning law. Unless the City of Columbus can show at trial that Mr. McLauglin's evidence mischaracterizes the availability of sites allowing adult uses, this Ordinance is unconstitutional. According-

---

**7.** Mr. McLaughlin testified that each of the parcels that could be available for adult uses are between four to six acres.

ly, Plaintiffs have shown a very strong likelihood of success on the merits at trial.

### B. Irreparable Harm

■ Plaintiffs argue that they will suffer irreparable harm absent injunctive relief, because the enforcement of the Ordinance will deprive them of their rights guaranteed by the First and Fourteenth Amendments to the Constitution. The City of Columbus does not dispute that Plaintiffs may suffer irreparable harm if the Ordinance is enforced against their interests.

The Court finds that Plaintiffs' constitutional rights may well be infringed if the Ordinance is enforced. The Supreme Court has held that "[t]he loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (citation omitted). Plaintiffs, therefore, have satisfied the second prong of the preliminary injunction standard.

### C. Substantial Harm to Others

■ Plaintiffs argue that U.S. Four and Giavono Foods have offered topless dancing at their establishments without incident, and that Franklin Jefferson will not harm the City of Columbus or its citizens if it is allowed to sell and disseminate sexually oriented products on its C-4 Commercial property. Defendant argues that it is important for the City to regulate, through zoning laws, the harmful secondary effects of sexually oriented businesses, so as to protect the health and safety of Columbus residents.

The Court finds that the third element of the preliminary injunction standard falls slightly in Defendant's favor. Although Plaintiffs have provided topless dancing and plan to sell adult products that are currently available elsewhere, the City has an interest in combating the harmful sec-

ondary effects associated with adult businesses. To some degree, a preliminary injunction would compromise the City's ability to protect the health and safety of its citizens from these threats. Yet, the record contains no evidence that an injunction would substantially harm others.

### D. Public Interest

■ Plaintiffs argue that the public interest is served by preserving their constitutional rights of speech and expression. Defendant argues that the public has a strong interest in preserving the quality of neighborhoods and urban life.

Preventing the City's infringement of constitutional rights undeniably serves the public interest. *See, e.g., Playboy Enterprises v. Meese,* 639 F.Supp. 581, 587 (D.D.C.1986) (recognizing that "[i]t is in the public interest to uphold a constitutionally guaranteed right"); *BJS No. 2, Inc. v. City of Troy, Ohio,* 87 F.Supp.2d 800, 818 (S.D.Ohio 1999). But the public interest is also served by protecting the health and safety of citizens, and preserving the quality of their neighborhoods. Thus, the fourth prong of the preliminary injunction standard favors neither party.

## VI. CONCLUSION

■ Accordingly, on balance, Plaintiffs have satisfied the preliminary injunction standard and are entitled to equitable relief. For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Preliminary Injunction. It is hereby **ORDERED** that until further judicial notice, the City of Columbus shall not enforce Ordinance 1425–01.

**IT IS SO ORDERED.**