**FRANKLIN JEFFERSON, LTD., et al., Plaintiffs,**

v.

**CITY OF COLUMBUS, Defendant.**

No. C2–02–55.

United States District Court,
S.D. Ohio,
Eastern Division.

Feb. 13, 2003.

J. Michael Murray, Berkman Gordon Murray & Devan, Cleveland, OH, for Plaintiffs.

Keith Scott Mesirow, Patricia A. Delaney, Columbus, OH, for Defendant.

### *ORDER AND OPINION*

MARBLEY, District Judge.

### I.  Introduction

This matter is before the Court on Plaintiffs' Motion for Summary Judgment. For the following reasons, Plaintiffs' Motion for Summary Judgment is **GRANTED.**

### II.  Facts and Procedural History

Plaintiffs seek summary judgment and a permanent injunction to restrain the City of Columbus ("Defendant" or "City") from enforcing an ordinance regulating adult businesses in the City. On July 30, 2001, the Columbus City Council enacted Ordinance 1425–01 (the "Ordinance") requiring

all future "adult entertainment establishments" and "adult stores" to be located in the City's manufacturing zones and at least one half mile from each other, residential areas, day care centers, schools, churches, and other community activities.[1] The Ordinance deleted previous sections of the City's zoning code that permitted adult businesses in "C–4" Commercial Districts, and now restricts them to "M" Manufacturing Districts.[2]

The Ordinance defines an "adult entertainment establishment" as:

an auditorium, bar, cabaret, concert hall, nightclub, restaurant, theater, or similar commercial establishment that recurrently features or provides one or more of the following:

1. Persons who appear in the *nude*,[3]

2. A live performance distinguished or characterized by an emphasis on the depiction, description, exposure, or representation of *Specified anatomical areas* or the conduct or simulation of *Specified sexual activities*, or

3. Audio or video displays, computer displays, films, motion pictures, slides, or other visual representations or recordings characterized or distinguished by an emphasis on the depiction, description, exposure, or representation of *Specified anatomical areas*, or the conduct or simulation of *Specified sexual activities*.

Similarly, the Ordinance defines an "adult store" as one or more of the following:

1. an establishment which has a majority of its shelf space or square footage

devoted to the display, rental, sale, or viewing of adult material for any form of consideration.

2. An establishment with an *Adult booth*.

"Adult material" is defined as:

items consisting of one or more of the following:

1. Digital or printed books, magazines, periodicals, audio, video displays, computer displays, films, motion pictures, slides, or other visual representations or recordings that are characterized or distinguished by an emphasis on the depiction, description, exposure, or representation of *Specified anatomical areas* or the conduct or simulation of *Specified sexual activities*, or

2. Devices, instruments, novelties, or paraphernalia designed for use in connection with *Specified sexual activities*, or that depict or describe *Specified anatomical areas*.

Plaintiff Franklin Jefferson, Ltd. sells sexually oriented books, magazines, periodicals, and videotapes on property it owns in the City, which is zoned C–4 Commercial. Franklin Jefferson seeks injunctive relief because the Ordinance would prevent it from operating this adult store. Plaintiffs U.S. Four, Inc. d/b/a Dockside Dolls and Giavono Foods, Inc. d/b/a Sirens operate businesses in a C–4 Commercial zoning district, in which they present topless female dancing. Plaintiff N.I.R.A., Ltd., is the landlord for Giavono Foods. These Plaintiffs seek an injunction because

---

1. On April 1, 2002, the Columbus City Council amended the July 30, 2001 Ordinance. The Court's Order and Opinion is based upon the April 1, 2002 version, which contained new definitions of "Adult entertainment establishment," "Adult material," and "Adult store."

2. Defendant states that the M Manufacturing District includes all commercial development

uses and the lowest tier of manufacturing uses, such as dry cleaners, food manufacturers, salvage yards, and warehouses. Other heavier manufacturing uses are placed in M–1 and M–2 manufacturing districts.

3. Italicized words or phrases also have specific meanings and definitions within the Ordinance.

the new Ordinance prevents them from expanding or relocating their adult establishments, and may prohibit them from operating on their current premises.

Plaintiffs filed a Complaint for Declaratory Judgment, Preliminary Injunction, and Permanent Injunction on January 17, 2002. The Complaint alleges violations of the United States Constitution, the Ohio Constitution, the Columbus charter, and the laws of the City of Columbus. This Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3), 28 U.S.C. §§ 2201–2202, 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 1367.

Plaintiffs initially sought a preliminary injunction. On April 11 and 12, 2002, the Court heard testimony during an evidentiary hearing. Plaintiffs' representatives Michael Moran, Bruce Huhn, and Timothy Wright testified, along with city planning expert R. Bruce McLaughlin, for Plaintiffs. Defendant presented testimony from the City's chief zoning official, Elizabeth Clark.

In an Order and Opinion issued May 6, 2002, the Court granted Plaintiffs' motion for a preliminary injunction. *See Franklin Jefferson Ltd. v. City of Columbus*, 211 F.Supp.2d 954 (S.D.Ohio 2002). Based on the evidence Plaintiffs presented at the evidentiary hearing, the Court found that Plaintiffs have a strong likelihood of success on the merits. The Court found that the City's Ordinance is a content-neutral regulation of speech and the City has a substantial government interest in regulating such speech. But the Court also found that the Ordinance does not "allow for reasonable alternative avenues of communication." *Id.* at 960. The testimony of Mr. McLaughlin, a city planning expert, revealed that under the City's Ordinance, only eleven sites in the entire City would be available for adult businesses. These eleven sites constitute only 0.008% of the City's total acreage, assuming each site is

one acre in size, or 0.047% of the City's total acreage, assuming that each site covers six acres. The Ordinance permits only one site per 64,679 people in Columbus. Furthermore, Mr. McLaughlin testified that none of the eleven sites is in fact available for development as an adult business. One site is already occupied by a brewery, and another site is occupied by a manufacturing plant. Another site is not suitable for construction due to a steep slope, while other sites lack access roads, sidewalks, and streetlights. The Court found that the City's assertion that 4.33% of the City's area is available for adult businesses under the Ordinance was incorrect because the City admitted that its calculations did not take into account the Ordinance's distance requirements. Therefore, because the Ordinance leaves open considerably less than one percent of the City's acreage for adult business, the Court granted Plaintiffs a preliminary injunction, noting that "[u]nless the City of Columbus can show at trial that Mr. McLaughlin's evidence mischaracterizes the availability of sites allowing adult uses, this Ordinance is unconstitutional." *Id.* at 961.

Because the City has not come forward with any additional evidence to refute the testimony of Mr. McLaughlin, Plaintiffs have moved for summary judgment on their claim that the Ordinance violates the United States Constitution. The Court now considers Plaintiffs' motion.

### III. Standard of Review

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The movant has the burden of establishing that there are no genu-

ine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

## IV. Analysis

Plaintiffs are entitled to a permanent injunction against enforcement of the City's Ordinance if the Court finds that the Ordinance violates the Constitution and Plaintiffs show that they will suffer "continuing irreparable injury" for which there is no adequate remedy at law. *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1067 (6th Cir.1998). The Supreme Court has held that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Therefore, the Court must only decide whether there is any genuine issue of material fact concerning whether the Ordinance violates the Constitution.

In evaluating restrictions on speech, the Supreme Court has distinguished content-based restrictions from content-neutral restrictions. *See, e.g., Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *Clark v. Cmty. for Creative Non–Violence,* 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Content-based restrictions are those that "restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago v. Mosley,* 408 U.S. 92, 95–96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). Content-neutral restrictions, or "time, place, and manner" restrictions, are those restrictions that "are justified without reference to the content of the regulated speech" and are permissible so long as "they are narrowly tailored to serve a significant governmental interest, and … they leave open ample alternative channels for communication of the information." *Clark,* 468 U.S. at 293, 104 S.Ct. 3065; *see also Ward,* 491 U.S. at 791, 109 S.Ct. 2746 (quoting *Clark* ).

The Supreme Court has upheld certain city zoning laws that restrict the establishment of adult entertainment businesses. In *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 52, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), the Court upheld a Detroit ordinance that forbid the establishment of certain adult businesses within a certain distance of other such businesses and residential areas. Although Detroit placed adult theaters in a different category than other theaters, the Court found the restriction to be a "time, place, and manner" restriction, which did not violate the First Amendment. *Id.* at 63 n. 18, 96 S.Ct. 2440; *id.* at 78–79, 82 n. 6, 96 S.Ct. 2440 (Powell, J., concurring).

Later, in *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), the Supreme Court clarified its stance on zoning laws and affirmed that they can be tailored as content-neutral restrictions. The ordinance at issue in *Renton* forbid the establishment of adult theaters within 1000 feet of residen-

tial zones and certain other properties. *Renton,* 475 U.S. at 43, 106 S.Ct. 925. The Court determined that this restriction was a content-neutral restriction because it was targeted not at the regulated speech, but rather at the "secondary effects" associated with that speech. *Id.* at 47–48, 106 S.Ct. 925. The ordinance was designed to reduce crime and increase property values in areas with high concentrations of adult businesses. The Court therefore decided that the restriction was "completely consistent with our definition of 'content-neutral' speech regulations as those that 'are *justified* without reference to the content of the regulated speech.'" *Id.* at 48, 106 S.Ct. 925 (quoting *Va. Pharmacy Bd. v. Va. Citizens Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976)) (alteration in original).

In this case, the Court has already concluded that the City's Ordinance is a content-neutral time, place, and manner restriction. Like the ordinance in *Renton,* the City's Ordinance is "focused on the secondary effects of adult businesses, rather than the content of their goods and services." *Franklin Jefferson Ltd.,* 211 F.Supp.2d at 959 (citing the preamble to the Ordinance). Put another way, the City's "interest in preventing harmful secondary effects is not related to the suppression of expression." *City of Erie v. Pap's A.M.,* 529 U.S. 277, 293, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). Plaintiffs do not dispute the Court's conclusion that the Ordinance is a content-neutral restriction.

To determine whether the Ordinance is constitutionally permissible as a content-neutral restriction, the Court must determine whether it is "designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Renton,* 475 U.S. at 50, 106 S.Ct. 925. The Court has already determined that the City's Ordinance was enacted for the substantial governmental

interests of combating prostitution, sexual assaults, and other criminal activity, and promoting public health and safety. *Franklin Jefferson Ltd.,* 211 F.Supp.2d at 960.

Therefore, the only remaining issue is whether the City's Ordinance leaves open reasonable alternative avenues of communication. Based on the testimony of Mr. McLaughlin that the City's Ordinance leaves open only eleven sites for adult businesses, the Court found in its Order and Opinion granting Plaintiffs' motion for a preliminary injunction that the Ordinance does not leave open reasonable alternative avenues of communication. *Franklin Jefferson Ltd.,* 211 F.Supp.2d at 961. The Court noted that "[u]nless the City of Columbus can show at trial that Mr. McLaughlin's evidence mischaracterizes the availability of sites allowing adult uses, this Ordinance is unconstitutional." *Id.* at 961. The City has not come forward with any additional evidence to demonstrate that Mr. McLaughlin's calculations are incorrect. The City argues, however, that the eleven available sites are sufficient to leave open reasonable alternative avenues of communication for adult businesses. The City notes that under *Renton,* the Court should not consider economic factors in determining whether the land left open for adult businesses is sufficient. Instead, the owners of adult businesses "must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees." *Renton,* 475 U.S. at 54, 106 S.Ct. 925.

Even if the Court considers that all eleven of the sites left open by the City's Ordinance are in fact available, the amount of land left open under the Ordinance falls short of that required under *Renton.* Under the ordinance considered in *Renton,* more than five percent of the city's land

area remained open for use for adult theaters. *Id.* at 54, 106 S.Ct. 925. In this case, Mr. McLaughlin estimates that each site is one acre large, and therefore only 0.008% of the City's total acreage would be available for adult businesses. Even assuming that each of the eleven sites left open is six acres large, as the City contends, only 0.047% of the City's land would be left open for adult businesses. The Court concludes that this amount of land in the City is inadequate to create reasonable alternative avenues of communication for adult businesses. In its Order and Opinion granting Plaintiffs a preliminary injunction, the Court cited numerous other federal courts that have found that ordinances leaving open less than one percent of a city's acreage for adult businesses do not provide reasonable alternative avenues of expression. *See Franklin Jefferson Ltd.,* 211 F.Supp.2d at 960 (citing numerous cases).

The Court does not hold that the City must leave five percent of the City's land open to adult businesses, as the ordinance in *Renton* did. Rather, the Court only finds that 0.047% of the City's land falls short of that amount that must be left open for adult businesses. Defendant notes that in *North Avenue Novelties, Inc. v. City of Chicago,* 88 F.3d 441 (7th Cir. 1996), the Seventh Circuit upheld a Chicago zoning ordinance that left less than one percent of the land in Chicago open for adult businesses. The court in *North Avenue Novelties* downplayed the importance of available acreage and instead focused on whether the ordinance provided a "reasonable opportunity" for adult businesses. *Id.* at 445. When the city passed the ordinance, there were thirty-five adult businesses in Chicago, and another twenty-two

to fifty-six locations available for new adult businesses under the ordinance. The Seventh Circuit found that this ordinance provided a reasonable opportunity for new adult businesses because there were ample sites available for new business, the city only received a few inquiries each year about opening new adult businesses, and there was no evidence that anyone who wanted to open an adult business had been prevented from doing so by the Chicago ordinance. *Id.* The facts in this case, however, are different. There is evidence before the Court that Plaintiffs would be unable to continue operating at their current location or would be unable to make certain additions to their existing businesses. Furthermore, with only eleven available sites, the evidence shows that there are not enough sites available for new businesses and old businesses to relocate if they want to expand.

Therefore, because the Court finds that the eleven sites left open for adult businesses under the City's Ordinance are inadequate to provide reasonable alternative avenues of communication under *Renton,* the Court need not consider whether the eleven sites are in fact available or have a genuine possibility of development for an adult business.[4] Because the Court finds that eleven sites are too few to provide reasonable alternative avenues of communication for adult businesses in Columbus, the Court grants Plaintiffs' Motion for Summary Judgment on their claim that the City's Ordinance violates the United States Constitution by failing to leave open adequate alternative avenues of communication for adult businesses.

### V. Conclusion

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is

---

4. The Court notes, however, that according to the uncontroverted testimony of Mr. McLaughlin during the April 11–12, 2002 preliminary injunction hearing, none of the eleven sites is in fact available for commercial development because each site lacks necessary infrastructure or is already occupied by another permanent facility.

GRANTED. Defendant City of Columbus is **PERMANENTLY ENJOINED** from enforcing Ordinance 1425–01 as enacted July 30, 2001 and amended April 1, 2002.

**IT IS SO ORDERED.**