Whynon Corporation, Appellant,
v.
Armstrong Township.
No. 1354 C.D. 2008.
Commonwealth Court of Pennsylvania.
Argued: March 31, 2009.
Filded: June 11, 2009.
Before: SMITH-RIBNER, Judge, BUTLER, Judge, FLAHERTY, Senior Judge.

OPINION NOT REPORTED
Memorandum Opinion by Senior Judge FLAHERTY.
Whynon Corporation (Whynon) appeals from an order of the Court of Common Pleas of Lycoming County (trial court) which determined that the zoning ordinance of Armstrong Township (Township) is not unconstitutional and ordered Whynon to cease operations of its adult bookstore. We affirm.
In June of 2005, Whynon opened a retail store named "Adult Outlet" which sold pornographic materials and offered the use of viewing booths, at 960 Route 15 Highway, South Williamsport, which is located within Township. A Township ordinance, adopted in 1994, was in effect at the time. The area where the store is located is within the HC Highway Commercial district which permits retail uses as a matter of right.
Prior to opening Adult Outlet, an agent for Whynon contacted the Township's zoning inspector to inquire as to whether a permit was needed to open a retail store at that location. Whynon was told that one was not needed, as the existing certificate of occupancy was sufficient.[1]
Ed Braunstein, Whynon's principal, examined the Township's zoning ordinance and determined that under its provisions, a license and special exception were necessary to operate an adult bookstore. However, Braunstein believed that the criteria to obtain the license and special exception granted unfettered discretion to Township officials to grant or deny them and as such, he did not apply for them. According to Braunstein, Section 307 of the ordinance completely zoned out adult bookstores by virtue of its ban on the retail sale of pornographic materials in the HC district.
Believing that the 1994 ordinance was unconstitutional, Whynon opened its doors for business and filed suit challenging the constitutionality of the 1994 ordinance and seeking an injunction against its enforcement. Thereafter, Township issued an enforcement notice maintaining that Whynon was in violation of Township's ordinance for "commencing business as an adult entertainment establishment without applying for a Special Exception and obtaining a zoning occupancy permit. This is in violation of Section 440 and Section 307 of the Armstrong Zoning Ordinance (enacted October 11, 1994, as amended.)" (Exhibit D of Defendant's motion for summary judgment.) Township also filed a response to Whynon's complaint and a cross-motion for an injunction, seeking to prohibit Whynon from operating the adult bookstore until such time as it complies with the 1994 ordinance requirements.
Following a hearing, the trial court issued an order on June 30, 2005, granting Township's request for a preliminary injunction and denying Whynon's request for a preliminary injunction. The trial court determined that Whynon's store would be deemed an "adult entertainment establishment" under Section 440, and a "public entertainment establishment" under Section 307 of the ordinance. Thus, the retail store operated by Whynon would be permitted as a "public entertainment establishment", as a special exception in the HC district under Section 307. Such establishments, therefore, are not banned completely by the ordinance.
On September 22, 2006, Whynon amended its complaint to add a claim for money damages from the closure of its store. On November 30, 2006, Township amended its adult use zoning ordinance to remove the special exception requirement, to remove the ban on the sale of pornographic material in the HC district, and to modify the spacing distance between adult entertainment uses and various other uses.[2]
Following the close of discovery, both parties moved for summary judgment. The trial court issued an order on December 31, 2007, wherein it struck down the ordinance, in part, upheld the majority of the rest of the law and set the case down for trial on the remaining issue.
Specifically, the trial court observed that Section 440 of the ordinance defines "adult entertainment establishment" and permits it as a special exception. Under Section 440, an "adult entertainment establishment" is permitted if is: (1) located in a district in article 3, (2) meets all of the requirements for a special exception and (3) obtains an annual license. Article 3, however, does not include "adult entertainment establishment" as a listed use permitted by right or as a special exception in any district. What article 3 does do, is limit stores and retail establishments to the HC district. Under Section 307 of the ordinance, stores and retail businesses are permitted uses, however, the sale of pornographic materials is specifically exempted. Section 307 does permit "public entertainment establishments." However, that term is not defined in the ordinance. According to the trial court, Whynon's store meets the definition of an adult bookstore under Section 440(A)(1) of the ordinance and as an adult cabaret under 440(a)(2), because of Whynon's viewing booths.
The trial court determined that the ordinance was ambiguous and that such ambiguity must be resolved in favor of the landowner, Whynon. Therefore, the trial court determined that "adult entertainment establishments" are a subcategory of "public entertainment establishments" and that Whynon may lawfully operate in an HC district as a permitted special exception.
The trial court further determined that the licensing procedures under Section 440 of the ordinance were sufficiently specified and that the special exception procedures under Article 10, Section D were also appropriate. However, the trial court further determined that the provisions in Article 10, Section D(1)(a)(f) were too broad to be constitutionally applied to Whynon, as they would empower the zoning hearing board to "covertly discriminate against adult entertainment establishments under the guise of general `compatibility' or `environmental considerations'". Lady J. Lingerie Inc. v. City of Jacksonville, 176 F.3d 1358, 1362 (11th Cir. 1999).
The trial court also determined that the time limits in the ordinance were constitutionally adequate. The trial court set forth the procedure to be followed in obtaining a special exception and license and determined that the timelines therein were neither indefinite nor unconstitutionally prolonged.
The trial court then scheduled a further evidentiary hearing on the issue of whether there were any lots in Township which were able to be developed as an adult entertainment establishment. Further, evidence was needed to determine whether there were "sufficient alternative avenues of communication that is locations either within Armstrong Township given its size and population and other unique characteristics that provide adequate alternative locations for retail establishments such as Whynon's in the Township or in nearby neighboring municipalities." (Trial court decision of December 31, 2007 at p.2.)
Following a hearing, at which Township presented the testimony of Clifford A. Kanz (Kanz), Development Services Supervisor of Lycoming County, Department of Planning Community Development, the trial court issued a decision on June 30, 2008. Therein, the trial court determined that sufficient alternative avenues of communication, consisting of lots upon which businesses like "Adult Outlet" could be operated, existed both within and outside of Township. Specifically, two lots were available in Township and there were sufficient nearby locations in adjoining municipalities that could also be developed. The trial court also denied Whynon's contention that the ordinance was unconstitutional because there were insufficient alternative means for Township's population to acquire pornographic material. Further, even if the ordinance was unconstitutional, Whynon was not entitled to a vested right because he never applied for a zoning permit under the 1994 ordinance.
This appeal followed. This court's review is limited to determining whether the findings of the trial court are supported by competent evidence and whether the trial court committed an error in the application of the law. Stonehedge Square Limited Partnership v. Movie Merchants, Inc., 685 A.2d 1019 (Pa. Super. 1996).
Initially, Whynon maintains that the Township's adult use zoning ordinance is unconstitutional. Laws that restrict where adult entertainment uses may be located must provide sufficient alternative avenues of communication in order to satisfy the First and Fourteenth Amendments. Young v. American Mini Theatres, Inc., 427 U.S. 50 (1976). A township must allow areas for the establishment of adult businesses.
According to Whynon, courts have consistently invalidated zoning laws that restrict adult businesses to less than one percent of a city's total acreage. Christy v. City of Ann Arbor, 824 F.2d 489 (6th Cir. 1987), cert. denied, 484 U.S. 1054 (1988)(vacating preliminary objections where adult businesses were restricted to 0.23% of city)[3]; Franklin Jefferson, Ltd., v. City of Columbus, 244 F. Supp. 2d 835 (S.D. Ohio 2003)(striking down law leaving open considerably less that one percent of the city's acreage for adult business).[4] Moreover, the land must be available as of right. Lady J. Lingerie (land in CCG-2 zone does not count for alternative avenues because an adult establishment must apply for an exception).
Here, Whynon argues that Township's ordinance is unconstitutional because it does not leave open sufficient alternative avenues of communication in that Section 300 and 401 of the ordinance prohibit adult uses entirely. Section 300 of the ordinance states:
The regulations set forth in this Article for each district shall be minimum regulations and shall apply uniformly to each class or kind of structure or land, except as herein provided;
A. No building, structure, or land shall be used or occupied and no building, or structure or part thereof shall be hereafter erected ... except in conformity with all of the regulations herein specified for the district in which it is located.
Section 401 of the ordinance provides:
Any use not otherwise expressly permitted in any district shall be prohibited.
Whynon argues that none of the districts expressly permit adult entertainment uses. Because Section 401 provides that any use is prohibited in a use district unless it is expressly permitted, a plain reading of the ordinance shows that adult entertainment uses are not allowed in the HC zoning district.
Although no section of the ordinance permits adult entertainment uses as of right, Whynon acknowledges that Section 440 permits adult entertainment uses as a special exception. Section 440 states that "Adult entertainment establishments or facilities as defined herein may only be permitted as a Special Exception in those districts specified in Article 3 ...." The problem, however, argues Whynon, is that in examining Article 3, none of the zoning districts specified therein allows adult entertainment uses. Thus, the ordinance operates as a complete zone out for adult establishments and is unconstitutional under the First and Fourteenth Amendments.
Furthermore, there is a complete prohibition on the retail sale of pornographic materials in the HC zoning district. Specifically, Section 307 of the ordinance, which defines the uses that are permitted in the HC district provides that "[s]tores and personal service shops, conducting any retail business except the sale of pornographic materials," are allowed as permitted uses. As a result, Section 307 unambiguously prohibits a retail adult bookstore such as Whynon's from being located in the HC district, as it imposes an outright ban on the sale of pornographic materials.
Township responds that Section 307 provides for a special exception for public entertainment establishments in the HC district. Section 440 allows adult entertainment establishments as a special exception and outlines the requirements for obtaining same. Thus, it was intended by Township that Section 440 would govern the allowance of adult entertainment establishments and would permit such uses if the conditions for the special exception were met.
In accordance with Section 603.1 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, as amended, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1, "language shall be interpreted, where doubt exists as to the intended meaning of the language and enacted by the governing body, in favor of the property owner against any implied extension of the restriction." Here, Section 440 clearly permits adult entertainment establishments as special exceptions. In construing the ordinance in favor of the property owner Whynon, we agree with the trial court that "adult entertainment establishments" are a subcategory of "public entertainment establishments" and that Whynon may lawfully operate in an HC district as a permitted special exception.
Moreover, as argued by Township, "[a] special exception is a conditionally permitted use, legislatively allowed where specific standards and conditions detailed in the ordinance are met. A special exception is not an `exception' to the zoning ordinance; rather, it is a use permitted in accordance with the express standards and criteria in the zoning ordinance." Agnew v. Bushkill Township v. Zoning Hearing Board, 837 A.2d 634, 637 (Pa. Cmwlth. 2003), petition for allowance of appeal denied, 578 Pa. 702, 852 A.2d 313 (2004). Because a special exception by its very nature is a permitted use, the special exception use set forth in Section 440 constitutes a permitted use of adult entertainment.
Whynon further argues that the special exception provision is unconstitutional because it confers impermissible jurisdiction on Township officials to grant or deny the special exception. Laws that vest discretion in government officials to restrain and prohibit expressive activity are unconstitutional. Lovell v. Griffin, 303 U.S. 444 (1938).
Here, Whynon maintains that the language of Section 1001.D of the ordinance, which governs special exceptions, illustrates the impermissible discretion conferred on Township officials in deciding to issue a special exception:
a. That the use is so designed, located and proposed to be operated that the public health, safety, welfare and convenience will be protected.
b. That the use will not cause substantial injury to the value of other property in the neighborhood where it is located.
c. That the use will be compatible with adjoining development and the proposed character of the zone in a district where it is to be located.
d. That adequate landscaping and screening is provided as required herein.
e. That adequate off-street parking and loading is provided and ingress and egress is designed to cause minimum interference with traffic on abutting streets.
f. That the use conforms with all applicable regulations governing the district where located.
According to Whynon, by conditioning the ability to engage in expressive activity upon the issuance of a special exception, the law, by definition, does not allow an adult entertainment use to operate as a matter of right. Lady J. Lingerie.
Moreover, Whynon maintains that the special exception provision is unconstitutional because it provides impermissible discretion to Township officials to grant or deny the exception. Specifically, Township officials consider a host of subjective criteria and Section 1001.D. of the ordinance also permits the zoning hearing board to attach whatever reasonable safeguards and conditions it deems appropriate.
Here, although the trial court agreed with Whynon that the "general requirements under sub-paragraphs a, b, c, d, and e above [of Section 1001.D] are too broad to be constitutionally applied to Whynon because "they would empower the Zoning Hearing Board to ... discriminate against adult entertainment establishments under the guise of general `compatibility' or `environmental considerations'" (Trial court's opinion, dated December 31, 2007 at p. 12, 13), Whynon argues that having found these provisions unconstitutional, the trial court should have granted its requested relief.
As determined by the trial court, however, although Section 1001.D is unconstitutional as applied to Whynon "[t]his does not, however, make Whynon a beneficiary of a statute unconstitutional at the time of its adoption and free of all of the constitutionally appropriate provisions of that ordinance. An ordinance may be constitutional in many respects and one unconstitutional provision therein does not declare or make the entire ordinance void and inapplicable to a particular party. Daniel Rothermel v. John Meyerle, 20 A. 583, 587-588 (1890); Comm. of PA v. Governor Robert Williams, [574 Pa. 487], 832 A.2d 962, 986 (2003)" (Trial court opinion dated June 30, 2008 at p. 12.)
Whynon also argues that the licensing requirements of Section 440 of the ordinance confer impermissible discretion to Township to grant or deny the license. Section 440.J of the ordinance provides:
When upon said investigation the Township determines that the proposed business, operation or activity may be conducted lawfully and without endangering the health or safety of proposed patrons and if it is found that the information set forth on the application is true and correct, the applicant to be of good character and reputation and that no license previously issued to the applicant hereunder was ever revoked and that the applicant is not indebted to the Township for taxes or for license fees of any kind or nature whatsoever, then a license shall issue no later than thirty (30) days after application had been made.
Although the trial court found all of the provisions of Section 440 to be valid, Whynon argues that, as was the case in considering whether to issue a special exception, Section 440.J likewise fails to cabin the discretion of Township officials and provides no standards by which the exercise of discretion may be tethered.
An ordinance that gives public official the power to decide whether to permit expressive activity must contain precise and objective criteria. Lady J. Lingerie. Here the licensing requirements provide for specific standards including whether information in the application is correct and whether the applicant owes taxes to Township.
Whynon also claims that the ordinance is unconstitutional because it fails to require Township officials to decide on an application for a special exception within a short amount of time. While the ordinance requires that a zoning board set a hearing within 60 days of an application filing, there are no provisions stating when the hearing must conclude. Thus, although Section 1002.G of the ordinance requires that the board issue a decision with 45 days of the last hearing, there is no limit as to when hearings must be concluded.
In addition to the time frame of the special exception, Whynon also argues that the ordinance is unconstitutional because it does not require Township to make a final decision with respect to a license application under Section 440 within a brief period of time.
Under the procedures set forth, after a completed application and payment are made, the zoning enforcement officer has 30 days to conduct his investigation. The law is silent, however, as to what happens after the 30 day period passes and no license is issued.
If the zoning officer decides that the license should be denied, an applicant is required to appeal to the Board of Zoning Appeals within 20 days. The board then has 60 days to set the matter for a hearing and another 45 days from the last hearing to issue its decision. Such is longer than the 150 days found to be unconstitutional in 11126 Baltimore Boulevard, Inc. v. Prince George's County, 58 F.3d 988 (4th Cir. 1995).
Township responds that as to both a special exception and a license, the ordinance specifically provides for judicial review. Specifically, if a special exception is denied by the zoning hearing board, Section 1002.L. provides that an appeal may be taken within 30 days to the Court of Common Pleas. Moreover, all rights of appeal are governed by the Municipalities Planning Code. Additionally, 440.J provides that if the zoning officer denies a license, an appeal may be taken to the zoning hearing board and then one can avail itself to the appeal procedures set forth in the Municipalities Planning Code. As such, the ordinance provides for judicial review.
Whynon next contends that the trial court erred in determining that the ordinance did not operate as a complete zone out. With respect to this argument, Whynon initially argues that the trial court erred in concluding that the spacing distances between an adult use and another use were not to be measured from property line to property line. The provisions of Section 440 of the Ordinance provide:
440 ADULT ENTERTAINMENT ESTABLISHMENTS
Adult entertainment establishments or facilities as defined herein may only be permitted as a Special Exception in those districts specified in Article 3 and shall meet the following standards.
A. For purposes of this Ordinance, Adult Entertainment Establishments include but are not limited to:
1. ADULT BOOKSTORE ...
2. ADULT CABARET...
3. ADULT DRIVE-IN PICTURE THEATER ...
4. ADULT MINI MOTION PICTURE THEATER ...
5. ADULT MOTION PICTURE THEATER ...
6. ADULT WALK-IN PICTURE THEATER ...
7. AMUSEMENT ARCADE ...
8. MASSAGE PARLOR ...
B. For purposes of this Ordinance, explicit and specified sexual activities include:
1. SPECIFIED ANATOMICAL AREAS ...
2. SPECIFIED SEXUAL ACTIVITIES ...
C. For the further promotion and protection of the public health, safety, morals and general welfare of the Township, certain uses as hereinafter specified are recognized as having a detrimental and deleterious effect when allowed to concentrate in an area .... Adult entertainment facilities shall not be located within:
1. 500 feet of any Residential District, residential structure, or rooming unit;
2. 1,000 feet of any church, school, theater, park, playground, public pool, billiard hall, amusement arcade, club or lodge; or other area where minors congregate;
3. 1,000 feet of any establishment licensed by the PA Liquor Control Board to dispense alcoholic beverages;
4. 1,000 feet of any restaurant, eating establishment or grocery store; nor within
5. 1,000 feet of any other adult entertainment establishment;
6. For the purposes of this Section, spacing distances shall be measured from all property lines of any of the uses specified or mentioned in Subsection B above.
Here, the trial court observed that with respect to Section 440.C.6 of the ordinance, there were various interpretations to its application because Section 440.C.6 specifically references "Subsection B." However, Subsection B describes specific sexual activities such as stimulation, erotic touching, etc., not property uses. Although both parties offered their interpretation of 440.C.6, the trial court determined that it was vague, that it was impossible to determine intent and that this paragraph should be deemed stricken from the ordinance. (Trial court's decision dated June 30, 2008, at p. 9. and trial court's opinion dated October 23, 2008 at p. 18.)
Thus, the ordinance only contains the provisions of subparagraph C, paragraphs 1-5, which provides that adult entertainment facilities are not to be within 500 feet of a residential area or 1,000 feet of specifically designated places. Further, the ordinance does not state that it applies to any part of a parcel used for such a prohibited space nor to open space, parking lots or property lines. Thus, Section 440 of the ordinance requires the prohibited distance to be measured from the adult entertainment facility structure to the particular disqualifying building or structure. (Trial court's opinion dated October 23, 2008 at p. 19.)
Under this interpretation, the trial court concluded that based on the testimony of Kanz, that at a minimum, an adult entertainment facility could be constructed on lots 113 and 113A, without violating the buffer distance requirement. Given that Township has only 771 inhabitants, is generally rural in nature, and has a limited amount of land for commercial development, the trial court concluded that having two lots available for an adult entertainment facility is sufficient.
Whynon argues that the proper interpretation of Section 440.C.6 of the ordinance is that its reference to "Subsection B" was a scrivener's error and that it should read "Subsection A". Specifically, Section 440.C.6 expressly states that the spacing distances set out in the law were intended to be measured from the property lines. The only subsection above Subsection C that specifies or mentions uses is Subsection A. Thus, when A replaces B, the ordinance calls for the spacing distance to be measured from "all property lines of the [adult uses] mentioned or specified above ...." Whynon maintains that the ordinance specifies that the spacing distance, the separation between the adult use and the other use, is to be measured from all property lines. When spacing distance is measured in this manner, it is undisputed that neither lot 113 nor lot 113A satisfy the requirements of the ordinance.
Township responds that the ordinance is ambiguous as to the manner in which the distance restriction in Section 440.C.1-5 is to be measured and that ambiguity's are to be construed in favor of the property owner. Here, Kanz reasonably construed the measurement provision contained in Section 440.C.6 to refer to the uses set forth in subsection C.1-5 and reasonably commenced all measurements from the property lines of those uses.
Further, although the ordinance is silent on the issue of where the distance limitation set forth in subsection C.6 is to be made to, Kanz testified that he applied subsection C.6 in such a fashion to permit the most liberal use of land. Thus, he started his measurement at the property line of all protected uses and measured out the specified distance, where a line was drawn around the protected property.[5] Using this methodology, Kanz testified that lots 113 and 113A were available for the establishment of an adult use.
As the trial court properly concluded, lots 113 and 113A are sufficient alternative sites available for use as an adult entertainment facility. The two lots available provide .4342 acres of land within the Township's HC zoning district. Given that Township consists of 17,540 acres of land, 7,624 of which are not controlled by a government entity, 21 acres which are in the HC district, that the population is 717 people, that there is very limited commercial development in Township, most of which is situated along the one major highway, parcels 113 and 113A are sufficient alternative sites available for use as an adult entertainment facility. The above considerations are proper in accordance with David Vincent, Inc. v. Broward County, 200 F.3d 1325, 1326 (11th Cir. 2000) which stated:
In Boss Capital [Inc v. City of Casselbury, 187 F.3d 1251, 1254 (11th Cir. 1999)], we specifically suggested considering the community's population and size, the acreage available to adult businesses as a percentage of the overall size, the location of available sites, the number of adult businesses already in existence, and the number of adult businesses wanting to operate in the community in the future. ... In another decision, we suggested considering the `community needs, the incidence of nude bars in other comparable communities, the goals of the city plan, and the kind of city the plan works toward.' International Food & Beverage Systems v. City of Fort Lauderdale, 794 F.2d 1520, 1526 (11th Cir. 1986).
Whynon further argues that even if lots 113 and 113A are, according to the trial court, available for adult uses, Whynon nonetheless argues that the other provisions of the ordinance render the lots unavailable. Specifically, lots 113 and 113A do not meet minimum lot size requirements, depth, width, setback and parking requirements.
Township responds that lot 113, which is 1.85 acres and lot 113A, which is 23, 958 square feet, are available for an adult enterprise. If both lots were purchased, the combined lots would easily afford space for the proposed venture. Even if only one of the lots were purchased, Whynon could erect a bookstore, but a smaller footprint would be necessary so as to comply with setbacks. Additionally, Whynon could have established off-site parking or requested a variance from setback requirements to increase available parking.
Further, the distance requirements set forth in the ordinance are narrowly tailored to serve the interest of protecting the morals and welfare of the community. Laws which set a minimum distance between adult entertainment establishments and a church or school are narrowly tailored to serve a substantial government interest because they are aimed at protecting those of tender age and/or those seeking religious guidance from exposure to the effects of adult establishments. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004).
Whynon also argues that the trial court erred in relying on adult uses on land outside of Armstrong Township in determining that alternative avenues of communication existed.
Here, in addition to the two lots available within Township, the trial court, relying on the testimony of Kanz, also concluded that there are large areas of available sites in nearby/adjacent municipalities. Thus, the two sites, plus the unlimited number of sites in surrounding counties, provide sufficient alternate suitable locations for adult entertainment use.
Whynon argues that the trial court erred in considering locations outside of Township and relies on Schad v. Borough of Mount Ephraim, 452 U.S. 61 (1981). In that case the borough prohibited all entertainment, including adult entertainment, within its borders. The borough argued that alternative avenues of communication existed since individuals could seek the same entertainment in nearby communities. We note that the Court in that case concluded that there was no evidence in the record to support the proposition that the kind of entertainment that appellants wished to provide was available in nearby areas. "The courts below made no such findings; and at least in their absence the ordinance excluding live entertainment from the commercial zone cannot constitutionally be applied to appellants so as to criminalize the activities for which they have been fined." Id. at 76.
Whynon also points to the decision in Freedom Baptist Church of Delaware County v. Township of Middletown, 204 F.Supp. 2d 857 (E.D. Pa. 2002). In that case a church brought suit against the township and county arguing that the land use restrictions on religious assemblies and institutions violated the Religious Land Use Institutionalized Persons Act. According to Whynon, the court rejected the argument that one could look outside the relevant community to determine whether alternative avenues of communication existed. In Freedom, the Court reiterated that a municipality cannot entirely exclude conduct that is protected by the first amendment.
Here, as found by the trial court lots 113 and 113A are available for Whynon's proposed activities. As such, Whynon's proposed use is not entirely excluded within Township.
Moreover, in addition to those lots available in Township, the trial court also observed that there were a significant number of additional alternative avenues of communication in the relevant market area. As stated in Illinois One News, Inc. v. City of Marshall, 477 F.3d 461, 463 (7th Cir. 2007):
Although Playtime Theatres and Alameda Books conclude that an adult-oriented business is entitled to `adequate' opportunities to sell its wares, neither decision holds that those opportunities must be in the same jurisdiction. The fourteenth amendment directs its commands to the states; how any given state slices up responsibilities among subdivisions normally is of no federal concern.
Here, Kanz testified that municipalities immediately surrounding Township are the City of Williamsport, South Williamsport Borough, Loyalsock Township and Clinton Township. Kanz stated that he reviewed portions of each municipality's zoning ordinance that discuss adult uses and noted the districts in which such uses are permitted. According to Kanz, the Playtime Boutique, an existing adult bookstore in Clinton Township is located 2.7 miles from Whynon's property. In the City of Williamsport, Kanz testified that 160 acres were available to be used for an adult bookstore, that nine acres were available in South Williamsport Borough and 437 acres were available in Loyalsock Township.
Whynon argues, however, that the trial court erred in relying on the testimony of Kanz. Kanz testified that he read the zoning ordinances of other jurisdictions, yet those ordinances were never introduced into evidence. Moreover, although he testified that adult uses were permissible in other surrounding areas, he was unable to testify as to whether they were uses permitted as of right or whether a special exception was necessary.
We agree with Township, however, that the admission of evidence is committed to the sound discretion of the trial court. Commonwealth v. Mitchell, 588 Pa. 19, 902 A.2d 430 (2006). Kanz testified that he was familiar with the demographics and geography of Township. Additionally, he testified as to the methodology he used in calculating distances in accordance with the ordinance provisions. There was no abuse of discretion by the trial court with respect to the admission of Katz's testimony.
Finally, Whynon argues that the trial court erred in determining that Whynon did not enjoy "grandfather rights" which would allow it to open Adult Outlet.
The trial court determined that Whynon was not entitled to grandfathered rights to allow opening of the adult store under the 1994 ordinance, even if the ordinance had been held unconstitutional as to Whynon, as Whynon never applied for a license to operate under the appropriate ordinance procedures.
Whynon argues that Section 900 of the ordinance authorizes legally existing uses to continue to exist, notwithstanding that changes to the ordinance would render it non-conforming. Whynon maintains that if the old law is unconstitutional, then Whynon is grandfathered at its location and is permitted to remain.
Whynon, however, is not entitled to a vested right because Whynon did not use due diligence in attempting to comply with the law, in that Whynon never attempted to comply with ordinance provisions regarding a license and special exception and never disclosed to Township officials the nature of its business. "Because the Appellants never applied for and were never issued a building or occupancy permit, they never acquired a vested right to use the property as an adult live entertainment facility or for any other use." Bottoms Up Enterprises, Inc. v. Borough of Homestead, 2007 U.S. Dist. LEXIS 74366 (W.D. Pa. Oct. 4, 2007). Further, the 1994 ordinance, which was not exclusionary, has since been amended, thereby increasing the available acreage within Township for adult bookstores from .4 acres to 21 acres.
In accordance with the above, the decision of the trial court is affirmed.

ORDER
Now, June 11, 2009, the order of the Court of Common Pleas of Lycoming County in the above-captioned matter, is affirmed.
NOTES
[1] Whynon's agent did not inform the zoning inspector as to what type of retail store was being opened.
[2] The constitutionality of the new ordinance is not at issue and has not been litigated.
[3] Case was remanded to determine whether the ordinance severely restricts first amendment expression.
[4] In that case, none of the eleven sites open to house adult businesses was actually available because each site lacked proper infrastructure or was already occupied by another permanent facility.
[5] Kanz then established buffer zones for the residential district, each residential structure and a tennis club. Any portion of land existing outside of these buffer zones, but within the HC district, was available for the establishment of an adult use. So long as the building points of the proposed adult use were located outside of the defined buffer zones, the adult use would comport with the distance restrictions.